**E-Filed 1/29/09**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SALLY HERRIOT,<br><br>                Plaintiff,<br><br>    v.<br><br>CHANNING HOUSE,<br><br>                Defendant. | Case Number C 06-6323 JF (RS)<br><br>**ORDER[1] DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[RE: Docket Nos. 63, 71] |

## I. BACKGROUND

Plaintiff Sally Herriot ("Herriot") seeks reconsideration of this Court's order dated August 26, 2008[2] ("the prior Order"), and reasserts her Fair Housing Amendments Act ("FHAA") claim and state-law claims. Defendant Channing House opposes reconsideration and moves separately for summary judgment with respect to Herriot's claims under the Americans with Disabilities Act

---

[1] This disposition is not designated for publication in the official reports.

[2] On October 24, 2008, Herriot was granted leave to file a motion for reconsideration of the prior Order on two grounds discussed herein.

Case No. C 06-6323 JF (RS)
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)

1  ("ADA") and her negligence claim.  The Court has considered the moving and responding papers,
2  as well as the oral arguments presented at the hearing on November 21, 2008.  For the reasons
3  discussed below, the motion for reconsideration will be denied, and the motion for summary
4  judgment will be granted.

5  A.      Underlying Dispute

6        Herriot is a ninety-year-old resident of Channing House, a continuing care retirement
7  community ("CCRC") where she has resided since 1992.  As a CCRC, Channing House is
8  licensed by the State of California to provide care and services to persons over the age of sixty-
9  two.  Residents of Channing House sign a contract that guarantees them lifetime care in the
10 facility in exchange for an entrance fee and monthly payments.[3]  Channing House offers its
11 residents a three-level continuum of care: independent living, assisted living and skilled nursing.
12 Independent living residents occupy their own apartments without any restrictions on visitation.
13 Assisted living and skilled nursing care are provided in shared facilities.  Channing House
14 transfers its residents to a higher level of care based on residents' health care needs.

15       In 2006, Herriot was hospitalized and Channing House determined that it was necessary to
16 transfer Herriot permanently from her independent living unit to an assisted living or skilled
17 nursing facility.  Herriot, her family and her personal physician, Dr. Deidre Stegman ("Dr.
18 Stegman"), objected to the transfer.  Herriot returned to her apartment and retained private care

---

[3] Pursuant to California Health & Safety Code § 1787(b), the California Department of Social Services ("DSS") reviews and approves each contract.  Upon her admission to Channing House in 1992, Herriot signed a document entitled "Continuing Care Agreement," which permitted her to reside in an independent living apartment and guaranteed her lifetime care within the Channing House facility. Exhibit 34 to Herriot's Deposition.  The Agreement provides, *inter alia*, that:

> When a resident . . . becomes so ill or enfeebled that, in the opinion of the staff physician, more efficient care in the best interest of the Resident can be provided in a care or skilled nursing unit . . . and that it is not a temporary condition, Channing House shall have authority to transfer Resident to the appropriate medical unit.

*Id.* at section 6(b).

2

Case No. C 06-6323 JF (RS)
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
(JFEX1)

for sixteen hours each day to assist her with hygiene, dressing and grooming activities. On April 25, 2006, Herriot received a letter from Channing House informing her that "[y]our physical condition and needs require that you be transferred to our on-site Assisted Living area. The level of care that you require exceeds that which may be lawfully provided in your current Independent Living Apartment." Complt ¶ 34; Answer ¶ 34. Channing House also contacted the California Department of Social Services ("DSS") regarding Herriot's case, indicating that Herriot was in need of twenty-four hour assistance and had limited ability to ambulate. The DSS instructed Channing House to "obtain an updated medical assessment of the resident." The DSS also warned that Channing House could be cited for failure to provide the basic services needed by its residents, and that "neither the licensee nor the resident can delegate the responsibility to another party or person." Exhibit I, Braginsky Declaration.[4] The medical director of Channing House, Dr. Jessica Davidson, has testified that Herriot objected to an examination by any nurse or physician employed by Channing House, and that instead she herself observed Herriot during two care conferences.

It is undisputed that Herriot requires twenty-four hour care, has limited ambulatory capacity and suffers from dementia. A report from Dr. Ami Laws ("Dr. Laws"), who conducted an independent medical examination of Herriot at the Court's request, confirms Herriot's need for twenty-four hour care, and states that she "needs help with all her ADL's[5] including bathing, dressing, going to the toilet, transferring from bed to chair [and] feeding . . ." Independent Medical Examination Report by Dr. Laws, Exhibit 1, Graft Declaration. The report is consistent with an assessment performed by Channing House dated April 9, 2007 and with Herriot's own admission that she requires assistance with the activities of daily living. *See* Shea Declaration, Exhibit A, ¶ 19. However, both Dr. Laws and Dr. Stegman opine that Herriot likely would suffer physically and mentally from a transfer to a skilled nursing facility.

---

[4] Herriot asserts that Channing House intended to bolster its relationship with DSS by its letter of July 5, 2006, rather than to provide an accurate assessment of her condition.

[5] Activities of Daily Living.

1    As a result of the instant litigation, Herriot has not been transferred. Channing House has
2  offered Herriot several options, including a proposal that she move into a shared room on the
3  assisted living floor but pay an additional $25.00 a day to convert the room to a private room that
4  she could furnish with some of her own belongings. Herriot has not accepted any of these
5  arrangements. Instead, she requests that she be permitted to remain in her independent living unit
6  and receive private care at her own expense.

B.   Procedural History

Herriot filed the instant action on October 10, 2006, asserting eight state and federal claims for discrimination because of her disabilities and failure to accommodate her request to remain in her independent living apartment.[6] On January 4, 2008, she moved for partial summary judgment with respect to her first, fourth, fifth and sixth claims; Channing House thereafter filed a cross-motion for summary judgment as to all of Herriot's claims. On February 8, 2008, after hearing oral argument, the Court requested that Herriot undergo an independent medical examination. On May 29, 2008, the parties submitted Dr. Laws' report, and they subsequently submitted comments on the report. On August 26, 2008, the Court issued its Order Denying Plaintiff's Motion for Partial Summary Judgment, Denying Defendant's Motion for Summary Judgment and Granting Defendant's Motion for Summary Adjudication. Channing House was

---

[6] Herriot asks that Channing House be held liable for: (1) discrimination or otherwise making unavailable a dwelling, in violation of 42 U.S.C. § 3604(f)(1) and discriminating in the terms, conditions or privileges of occupancy of a dwelling because of a disability, in violation of 42 U.S.C. § 3604(f)(2); (2) failure to provide her with and denying her the opportunity to participate in or benefit from certain goods, services privileges, advantages and accommodations and failure to make reasonable modifications, in violation of 42 U.S.C. § 12101; (3) denying her the opportunity to participate and benefit from living at Channing House, in violation of § 504 of the Rehabilitation Act; (4) discrimination or otherwise making unavailable a dwelling, discriminating in the terms, conditions or privileges of occupancy of a dwelling because of a disability, refusing to make reasonable accommodations, and interfering with, threatening coercing or intimidating her, in violation of Cal. Gov. Code § 12900; (5) violating Cal. Civ. Code § 51; (6) denying full and equal access to housing in violation of Cal. Civ. Code § 54(b)(1) and refusing to make reasonable accommodations in rules, policies, practices or services, in violation of Cal. Civ. Code § 54.1(b)(3)(B); (7) violation of Cal. Bus. & Prof. Code § 17200; and (8) negligence.

4

Case No. C 06-6323 JF (RS)
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
(JFEX1)

granted summary adjudication with respect to Herriot's first, fourth, fifth, sixth and seventh claims. Herriot conceded her third claim brought pursuant to Rehabilitation Act § 504. The Court declined to address Herriot's second claim under 42 U.S.C. § 12101 and her eighth claim for negligence, but indicated that "[e]ither party may file an appropriate motion with respect to these claims in light of the legal analysis set forth herein." Order at 5 fn. 3.

On October 10, 2008, Herriot sought leave to file a motion for reconsideration of the prior Order. She argued that this Court (1) invaded the province of the jury by deciding the issue of whether Herriot requires the type of care specified in California regulations, (2) failed to apply the *Johnson Controls*[7] test to her discrimination claims, and (3) did not consider certain exceptions to the California regulations that otherwise would require Herriot's transfer to assisted living or a skilled nursing facility.[8] The Court granted leave to seek reconsideration with respect to the applicability of *Johnson Controls* and the regulatory exceptions, but declined reconsideration of its conclusion that there is no genuine dispute of material fact as to the type of care Herriot requires.[9] Channing House opposes reconsideration and moves separately for summary judgment with respect to Herriot's second and eighth claims.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material

---

[7] *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991).

[8] Herriot brought the regulatory exceptions to the Court's attention for the first time in her motion for leave to seek reconsideration. Although Herriot has not explained how, "in the exercise of reasonable diligence[,] [she] did not know [of the "exceptions" to the regulation] at the time of the [Court's] order," as required by Civil Local Rule 7-9(b)(1), the Court will construe the rule generously and grant the motion for leave to file a motion for reconsideration with respect to the regulatory exceptions.

[9] In particular, this Court held that it "did not manifestly fail to consider the record before it or a 'dispositive legal argument' concerning the propriety of evaluating evidence on a summary judgment motion." Order Granting in Part and Denying in Part Motion to File a Motion for Reconsideration at 3. To the extent that the instant motion for reconsideration asserts arguments as to which leave has not been granted, the arguments will not be considered here.

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

Herriot seeks reconsideration of this Court's adjudication of her FHAA and state-law claims in favor of Channing House, which in turn moves for summary adjustment on Herriot's remaining ADA claim and negligence claim. Essentially, Herriot alleges failure to accommodate and disability discrimination. She contends that Channing House should be required to modify its transfer policy, seek an exception to DSS regulations, and permit her to remain in her independent living apartment with the assistance of personally-funded private aides. She also asserts that the transfer policy discriminates against Channing House's residents on the basis of their disabilities. Channing House argues that it should not be required to seek an exception to its policy or the DSS regulations because legally it may not delegate its duty of care to private aides, and that even if an exception were granted, the requested accommodation would constitute a fundamental alteration of its continuing care program. Channing House asserts that it seeks to transfer Herriot not because of her disabilities but because as a matter of law Herriot may not remain in an independent living unit.

A.  <u>Failure to Accommodate Claims</u>

The FHAA's definition of prohibited discrimination encompasses "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations

6

may be necessary to afford [the physically disabled] equal opportunity to use and enjoy a dwelling." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1146 (9th Cir. 2003) (citing 42 U.S.C. § 3604(f)(3)(B)). The definition of discrimination under Title III of the ADA includes "failing to make a reasonable modification in 'policies, practices, or procedures,'[ . . . ] necessary to accommodate [a person's] disability." *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (citing 42 U.S.C. § 12182(b)(2)(A)(ii)) (internal citations omitted).

Both of Herriot's failure to accommodate claims turn on the question of whether her requested accommodation is reasonable. In its prior order, this Court held that "Herriot requires a type and degree of care that Channing House may not lawfully provide in an independent living unit." Order at 8 (citing 22 Cal. Code. Reg. § 87455(c)(2) (resident requires 24-hour care); 22 Cal. Code. Reg. § 87615(a)(5) (resident needs assistance with all activities of daily living)).[10] As it noted in granting Herriot's request for leave to file a motion for reconsideration, the Court reached this conclusion without the benefit of briefing with respect to certain regulatory exceptions that permit variances "to a specific regulation based on the unique needs or circumstances of a specific resident." 22 Cal. Code Reg. § 87101(e)(6). Herriot contends that if "the intent of the law [could] be met through alternative means," Channing House could (and in this case should) submit a written exception request on behalf of a resident who "has a prohibited and/or restrictive health condition." *Id.* § 87616.

However, although there may be some circumstances where a facility's refusal to seek an exception on a resident's behalf would be actionable, that is not the case here. Channing House has a legal responsibility to be aware of its residents' conditions on an on-going basis so that it can respond to their changing needs and bring in medical interventions as necessary. *Id.*. § 87466.

---

[10] As a licensed Residential Care Facility for the Elderly ("RCFE") under California Health & Safety Code § 1569.2(k), Channing House must comply with regulations promulgated by the California Department of Social Services ("DSS"). Cal. Health & Safety Code §1788. DSS Regulations provide that "[n]o resident shall be accepted or retained [in a RCFE] if . . . [t]he resident requires 24-hour, skilled nursing or intermediate care." 22 Cal. Code Reg. § 87455(c)(2). Moreover, a RCFE may not retain "[r]esidents who depend on others to perform all activities of daily living." 22 Cal. Code Reg. § 87615(a)(5)

7

Case No. C 06-6323 JF (RS)
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)

To ensure that RCFE's "provide the services necessary to meet resident needs," DSS imposes extensive personnel training and supervision requirements, including a detailed training protocol for "[a]ll RCFE staff who assist residents with personal activities of daily living." *Id.* § 87411. In its interpretation of this provision, the Community Care Licensing Division ("CCLD")[11] has clarified that an RCFE may not delegate its duty of providing assistance with activities of daily living to privately paid personal assistants. CCLD Evaluator Manual, *Regulation Interpretations and Procedures for Residential Care Facilities for the Elderly* 61 (January 2002).[12]

California law not only prohibits Channing House from delegating its care duties to

---

[11] The CCLD is a division within the DSS.

[12] The DSS Evaluator Manual provides procedures, clarification and interpretations of the regulations. The Court takes judicial notice of the following comment on 22 Cal. Code Reg. § 87411 (formerly § 87565(a)):

> An increasing number of residents in residential care facilities for the elderly are using privately paid personal assistants (also referred to as "private caregivers"). A privately paid personal assistant is hired by the resident, the resident's family, or the resident's conservator to provide personal services to the resident in the facility.
>
> Under Health and Safety Code §1569.312, a residential care facility for the elderly must provide basic services, which by definition include assistance with activities of daily living. Regulation §§ 87590(f), Basic Services, and 87578(a), Personal Assistance and Care, more specifically describe these activities to include personal assistance and care as needed by the resident with activities of daily living that the resident is unable to perform for him/herself. The licensee cannot delegate these services. The services of privately paid personal assistants *do not* relieve the licensee of the responsibility to meet all licensing statutory and regulatory requirements. [ . . . ] *Privately paid personal assistants may only provide services other than those the licensee is required to provide.*
>
> A resident's use of a privately paid personal assistant does not in any way diminish the licensee's responsibility to protect the resident's health and safety and to ensure that the resident's needs are met.

*Id.* (emphasis original). Notably, the Evaluator Manual in part "is provided to assist licensing program analysts in their evaluations of requests for waivers and exceptions." *Id. Reference Materials for Office Functions* 15 (January 2002). The cited portions of the Evaluator Manual are available online at http://www.ccld.ca.gov/res/pdf/RCFE.pdf (last visited December 3, 2008) and http://www.ccld.ca.gov/res/pdf/OfficeFunctions.pdf (last visited December 4, 2008).

Case No. C 06-6323 JF (RS)
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)

private aides, but it also expressly authorizes Channing House's proposed transfer of Herriot to its staffed nursing floor. California Health and Safety Code § 1788(a)(10)(A), which regulates continuing care contracts, provides an explicit statutory basis for transfer to a higher level of care when the care required by the resident exceeds that which lawfully may be provided in the living unit. As noted above, there does not appear to be a genuine dispute of material fact with respect to the type and degree of care required by Herriot. Prior Order at 8. Although the regulations contemplate exceptions, Herriot requests an accommodation that unreasonably and impermissibly would require Channing House to violate its legal obligations.

Herriot's reasonable expectations upon entering Channing House also undermine her legal position. Herriot's Continuing Care Agreement expressly provides that at some point Herriot might be required to transfer to a higher level of care better equipped to address her care needs. Channing House is designed so that residents who no longer are able to live independently will receive more intensive care and supervision at either the assisted living or skilled nursing levels of care. The system serves the health and well-being of residents, while ensuring that Channing House can discharge its managerial responsibilities that it is obligated both legally and contractually to provide. Herriot remains free to choose both where she lives and what type of personal care she will receive by moving to a private residence apart from Channing House.

In addition, neither the FHAA nor the ADA impose liability on a provider for failing to provide an accommodation that fundamentally would alter the nature of its business. *Giebeler*, 343 F.3d at 1157; 42 U.S.C. § 12182(b)(2)(A)(ii). The CCRC model, which every resident accepts when they move into Channing House, offers a degree of certainty with respect to a resident's medical costs and contemplates transfers along a "continuum of care" designed to meet residents' healthcare needs.[13] California law recognizes that CCRCs must have control over

---

[13] The statutory definition of a "life care contract" provides, *inter alia*,

> Care shall be provided under a life care contract in a continuing care retirement community having a comprehensive *continuum of care*, including a skilled nursing facility, under the ownership and supervision of the provider on or adjacent to the premises.

9

level-of-care decisions, and it expressly authorizes involuntary transfers within the continuum of care. Cal. Health & Safety Code § 1788(a)(10)(A). Herriot argues that the presence of private personal care aides would not be remarkable in a facility providing residential life care for seniors. Although it likely would not be remarkable for aides to be present temporarily, it would be a fundamental alteration, and an unlawful accommodation as discussed above, to permit the private aides to provide all of the assistance required by a resident.

B.   FHAA Discrimination Claim

Herriot next argues that the Court erroneously evaluated the *McDonnell Douglas*[14] burden-shifting test because she presented direct rather than circumstantial evidence of disability discrimination. She notes correctly that the proper standard for challenging facially discriminatory policies is derived from *Johnson Controls*, 499 U.S. at 200-01. *See Community House, Inc. et al v. City of Boise et al.*, 490 F.3d 1041, 1049 (9th Cir. 2007). Under *Johnson Controls*, a plaintiff makes out a case of intentional discrimination by showing that the defendant's policy "on its face applies less favorably to a protected group." *Id.* at 1048.

However, on its face the policy at issue here does not apply less favorably to disabled individuals as a group. The transfer policy does not result in differential treatment toward or exclude a specific class of persons. Herriot is being treated no differently than other residents, including residents with disabilities, who have agreed contractually to move through the continuum of care. Application of the transfer policy does not exclude *all* disabled persons from residing in independent living, but rather conforms with state regulations that require residents who need twenty-four hour care or assistance with their activities of daily living to reside in a level of care appropriate to their needs.

This Court thus appropriately applied the *McDonnell Douglas* burden-shifting framework to Herriot's disparate treatment claim under the FHAA and FEHA. *See Sanghvi v. City of Claremont*, 328 F.3d 532, 536 n. 3 (9th Cir. 2003) (noting that *McDonnell Douglas* framework

---

California Health & Safety Code § 1771(1) (emphasis added).

[14] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

developed in the Title VII context extends to FHAA and ADA claims). Under *McDonnell Douglas*, once the plaintiff has established a prima facie case, the burden shifts to the defendant, which must articulate a legitimate nondiscriminatory reason for the application of its policies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). In light of the analysis above, the Court concludes that Channing House's compliance with state regulations and its legal and contractual right to uphold the fundamental nature of its continuing care program are legitimate nondiscriminatory reasons for its policy and decision to transfer Herriot.

C.     ADA Discrimination Claim

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007). It is undisputed here that Herriot has one or more disabilities within the definition of the ADA and that Channing House is an entity subject to the ADA. With respect to the third element, Herriot must show that her disability was one factor in the defendant's alleged discriminatory treatment. *See Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005)("on the basis of the plain language of the ADA, and with the support of seven other circuits, we conclude that 'solely' is not the appropriate causal standard under any of the ADA's liability provisions"). Channing House argues that its transfer policy and decision to transfer Herriot are based specifically on compliance with state regulations and upholding its continuum of care. Herriot argues that it is precisely her disabilities that trigger the state law obligation and contractual right to transfer. Confronted with a similar motivational issue, another district court has observed:

> While Plaintiff's arguments have some emotional appeal, they fail to account for the fact that acceptance into an assisted living facility presupposes that a resident has a physical or mental disability and needs assistance with daily activities of living. But there is a statutory ceiling on the level of care that assisted living facilities are both authorized and required to provide. Therefore, [Defendant] is entitled to assess whether Plaintiff's disabilities match the level of care [it] is authorized to provide. And [Defendant] only contracted to provided a limited level of care as an assisted living facility. The parties' agreement expressly permits [Defendant] to assess whether Plaintiff's needs and [Defendant's] resources are compatible.

11

*Winters ex rel. Winters v. Chugiak Senior Citizens, Inc.*, 531 F. Supp. 2d 1075, 1081 (D. Alaska 2007).[15] This reasoning is equally applicable here.

D.   Remaining Claims

The foregoing analysis also disposes of Herriot's state-law claims. Channing House is entitled to summary judgment on Herriot's fourth claim for discrimination and failure to accommodate under FEHA, Cal. Gov. Code § 12900 *et seq.*; her fifth claim for violation of Cal. Civ. Code § 51; her sixth claim for denial of equal access to housing under Cal. Civ. Code § 54(b)(1) and failure to accommodate under Cal. Civ. Code § 54.1(b)(3)(B); and her seventh claim for violation of Cal. Bus. & Prof. Code § 17200. To prevail on her negligence claim, Herriot must establish that (1) Channing House owed her a duty of care; (2) Channing House breached its duty; (3) she was injured as a proximate result of the breach; and (4) she sustained damages. *Jones v. Grewe*, 189 Cal. App. 3d 950, 954 (1987). Because Channing House has acted in accordance with the contractual and legal obligations that define its standard of care, Herriot cannot establish the first element of her claim.

## V.   ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that Herriot's motion for reconsideration is DENIED and Channing House's motion for summary judgment is GRANTED. Judgment shall be entered accordingly.[16]

DATED: January 29, 2009

_____
JEREMY FOGEL
United States District Judge

---

[15] *Winters* granted summary judgment to an assisted living facility against the plaintiff's ADA discrimination claims. *Id.* at 1082. The court premised its finding in part on the fact that the plaintiff was accused of disruptive behavior in the facility. *Id.* However, *Winters* relied principally on the fact that the housing agreement was terminated because Plaintiff's "needs continue to exceed the limits of services [Defendant] can offer residents." *Id.* at 1078.

[16] Because of the sensitive nature of this case, the legal effect of the judgment shall be stayed pending a Case Management Conference on February 27, 2009 at 10:30 a.m.

12
Case No. C 06-6323 JF (RS)
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)

1  This Order has been served electronically upon the following persons:

2      Alexander A. Graft graft@lbbslaw.com

3      George John Ziser ziser@lbbslaw.com

4      James F. Zahradka , II jamesz@lawfoundation.org, teresam@lawfoundation.org

5      Kimberly Pederson kimp@lawfoundation.org

6      Kyra Ann Kazantzis kyrak@lawfoundation.org

7      Michael Allen mallen@relmanlaw.com, ngupta@relmanlaw.com

Case No. C 06-6323 JF (RS)
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)